UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RACHEL L. MATTHEWS,

                Plaintiff,

    -v-                                      6:11-CV-174

SLOCUM–DICKSON MEDICAL GROUP,
PLLC; MARK PATELL[1]; and JOHN and
JANE DOE(S);

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                           OF COUNSEL:

BOSMAN LAW OFFICE               A.J. BOSMAN, ESQ.
Attorneys for Plaintiff
6599 Martin Street
Rome, NY  13440

HISCOCK, BARCLAY LAW FIRM      ROBERT P. HEARY, ESQ.
Attorneys for Defendants
3 Fountain Plaza
1100 M&T Center
Buffalo, NY  14203
One Park Place                          ANNE B. DOTZLER, ESQ.
300 South State Street
Syracuse, NY  13202


DAVID N. HURD
United States District Judge

---

[1] According to defendants' motion paperwork, the proper spelling of this defendant's last name is Petell.  Therefore, that spelling will be used hereinafter, and the Clerk of the Court is directed to amend the caption accordingly.

**MEMORANDUM–DECISION and ORDER**

I. **INTRODUCTION**

In January 2011 plaintiff Rachel L. Matthews ("plaintiff" or "Matthews") filed an action in the Supreme Court, Oneida County, against defendants Slocum–Dickson Medical Group, PLLC ("Slocum–Dickson") and Mark Petell, Human Resources Director at Slocum–Dickson ("Petell").[2]  Defendants removed the case to federal court on February 15, 2011.  Plaintiff filed a new complaint on July 8, 2011, alleging employment discrimination based on race and disability.  Specifically, she asserts the following causes of action:  (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) race discrimination in violation of 42 U.S.C. § 1981; (3) disability discrimination in violation of Titles I and II of the Americans with Disabilities Act ("ADA")[3]; and (4) race and disability discrimination in violation of New York Human Rights Law.  Plaintiff seeks compensatory and punitive damages, injunctive and declaratory relief, reinstatement, and reasonable attorneys' fees and costs.

The parties have completed discovery, and defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff has responded in opposition, and defendants replied.  Oral argument was heard on October 24, 2012, in Utica, New York.  Decision was reserved.

II. **FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are undisputed.  Plaintiff is a thirty-two-year-old Hispanic female who was diagnosed with depression, anxiety, and obsessive

---

[2] At oral argument, defense counsel advised that Petell is no longer employed at Slocum–Dickson.

[3] Defendants correctly note that Title II of the ADA may not be used to assert an employment discrimination claim.  See Chiesa v. N.Y. State Dep't of Labor, 638 F. Supp. 2d 316, 321 (N.D.N.Y. 2009).  Plaintiff does not respond to this argument.  This claim will therefore be dismissed.

compulsive disorder at age eighteen. In February 2010 she applied for employment at Slocum–Dickson.[4] Prior to submitting this application, she had been a patient of various physicians at Slocum–Dickson, including Dr. Steven LaGrant ("Dr. LaGrant"). On February 26, 2010, plaintiff was interviewed by Karen Francis, Clinical Educator at Slocum–Dickson ("Francis"). She informed Francis that she wanted to work at Slocum–Dickson because she had received great care as a patient at the facility. Francis did not ask plaintiff about her diagnoses or treatment history. Nor did Francis ask about plaintiff's race or ethnic background, which was never discussed.

On March 3, 2010, Matthews met with Michele Shanley, Director of Nursing at Slocum–Dickson ("Shanley"), for a second interview. Plaintiff repeated her desire to work at Slocum–Dickson because of the care she received there. Her race and ethnicity was not discussed. Approximately one week later Petell sent plaintiff a letter offering her employment as a Medical Assistant. Plaintiff accepted and, on March 23, 2010, completed a mandatory physical exam and drug test. During the exam she disclosed that she suffers from anxiety.

On April 5, 2010, Matthews began a three-month probationary period and a four-week orientation and training program with eight other new employees. Defendants assert—and plaintiff denies—that she was disruptive during the orientation, failed to correct her behavior despite warnings, and did not absorb the information presented in training sessions. After several days of orientation and training, Francis removed plaintiff from the program and recommended that she be terminated. On April 9, 2010, plaintiff met with Petell, and her

---

[4] Slocum–Dickson is a physician-owned medical group with over 400 employees and is an "at-will" employer.

employment was formally terminated. Plaintiff claims Petell told her she was being terminated because she made the clinical staff "uneasy."[5]

Matthews filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination in violation of the ADA. On June 29, 2010, she requested to amend her EEOC complaint to add claims of discrimination based on race and ethnicity as well as a retaliation claim. In response, the EEOC asked for additional information to support these amended allegations. Plaintiff never provided such information. The EEOC ultimately found insufficient evidence to support a claim of discrimination and issued a right to sue letter on October 25, 2010.

## III. DISCUSSION

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

---

[5] At oral argument, plaintiff's counsel claimed plaintiff was advised that there was a "clinical consensus" that she made the staff "uneasy or uncomfortable."

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Defendants' Motion for Summary Judgment

Matthews alleges she was discriminated against based on her race, ethnicity, and/or disability. She further claims defendants' assertion that she was disruptive during orientation and unable to retain information conveyed in training classes is merely a pretext for discrimination.

Claims of employment discrimination brought pursuant to Title VII, § 1981, the ADA, and New York Human Rights Law are all subject to the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973). See Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (Title VII, § 1981, and New York Human Rights Law); McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 96 (2d

Cir. 2009) (ADA). Therefore, all of plaintiff's causes of action will be analyzed together. Under this standard, a plaintiff must first establish a prima facie case of discrimination, then the employer must offer a legitimate non-discriminatory reason for the termination through admissible evidence. McBride, 583 F.3d at 96. Finally, the plaintiff must "produce evidence and carry the burden of persuasion that the proffered reason is a pretext" for discrimination. Id.

Matthews cannot establish a prima facie case of discrimination based on her race or ethnicity because there is nothing in the record that would give rise to an inference of such discrimination. There is no indication that defendants even knew she is Hispanic. It is undisputed that plaintiff's ethnicity was neither disclosed on her employment application nor discussed during her interviews with Francis and Shanley.[6] The only evidence plaintiff identifies to support her race discrimination claims is comments allegedly made by Dr. LaGrant regarding Spanish rice and her resemblance to the Colombian entertainer, Shakira. It is unclear when these comments were made. Regardless, there is nothing linking these comments to the employees of Slocum–Dickson who made the decision to hire and fire plaintiff. In her deposition plaintiff acknowledged that Dr. LaGrant had no connection to her employment.

---

[6] Plaintiff's assertion that her ethnicity is evident by her physical appearance undercuts her discrimination claims because Francis and Petell made the decision to both hire and fire her. See Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring."). Assuming, as plaintiff alleges, that defendants were aware of her race and ethnicity when they offered her a Medical Assistant position, it is unreasonable to infer that the decision to terminate her employment only one month later—and merely one week into orientation—was motivated by these characteristics.

Similarly, plaintiff cannot establish a prima facie case of disability discrimination. Even assuming defendants were aware of her mental health condition,[7] and that such constituted a "disability," there is no evidence from which to infer that her termination was motivated by her disability. While Petell told plaintiff she was being terminated because she made the clinical staff "uneasy," or because there was a "clinical consensus" that she made the staff uneasy, there is nothing in the record to support her conclusion that the staff was uneasy because of her disability. In her deposition, plaintiff stated that she did not recall Petell linking her status as a patient at Slocum–Dickson to the uneasiness expressed by staff. Further, plaintiff testified that Francis never made any comments regarding her disability or medications.

Even if she could establish a prima facie case of discrimination, Matthews fails to carry her burden to rebut defendants' proffered legitimate, non-discriminatory reason for her termination. Defendants have submitted affidavits from Francis, who oversaw the orientation and training program, and one of the new employees who attended the program with plaintiff.[8] Both witnessed plaintiff's disruptive behavior—i.e. asking numerous off-topic questions and initiating irrelevant discussions—despite warnings about her conduct. In an internal memorandum to Petell, Francis noted that several speakers from the training program complained of plaintiff's behavior. In her affidavit, Francis also reported that plaintiff was unable to evidence an understanding of the training material during daily quizzes.

---

[7] Indeed, plaintiff disclosed her anxiety condition during her pre-employment physical exam. She also alleges that Francis overheard a discussion between her and Dr. LaGrant regarding her depression and anxiety medication. In her deposition, however, plaintiff testified that Petell—the only individually named defendant—was not aware of her disability during her employment.

[8] Matthews identified this employee, Rachel Olds, as her friend and a potential witness to support her version of the facts. In her affidavit, however, Olds reports that plaintiff was talkative, disruptive, and inattentive during class. She also denied witnessing any discriminatory action taken against plaintiff. Importantly, Olds's employment with Slocum–Dickson ended over two years before she provided the testimony in her affidavit.

Notably, this all occurred during the first week of plaintiff's three-month probationary employment period at Slocum–Dickson, an at-will employer.

In response, Matthews simply denies being disruptive and claims she performed well during the training. However, she acknowledges being talkative during orientation and asking numerous questions in training sessions. In her deposition she noted that Francis expressed frustration with her excessive talking and questioning during class on at least one occasion. See Pl.'s Dep. Tr., Dkt. No. 51-1, 97–99.

Plaintiff also alleges that Kristie Sweezey ("Sweezey"), a white employee with Attention Deficit Hyperactivity Disorder in the same orientation and training program, was also disruptive. Plaintiff claims Sweezey was advised to get herself "under control" but was not fired. Id. at 65:21–22. In her affidavit, Francis acknowledged that Sweezey was somewhat disruptive but not to the extent of plaintiff's conduct. Francis further testified that she did not receive any complaints about Sweezey, who promptly corrected her behavior and exhibited a better understanding of the training material than plaintiff.

Even assuming, as must be done for purposes of this motion for summary judgment, that Sweezey was equally as disruptive as plaintiff, it is undisputed that Sweezey had been hired as an "LPN," not as a Medical Assistant like plaintiff. Plaintiff reports that Slocum–Dickson "needed LPNs more than Medical Assistants," indicating that the decision to terminate plaintiff but not Sweezey was based on factors other than plaintiff's race, ethnicity, and/or disability. Id. at 101:9–10.

In short, there is no evidence in the record from which to infer that plaintiff's termination was motivated by her race, ethnicity, and/or disability. Accordingly, defendants' motion for summary judgment will be granted.

## IV. CONCLUSION

Matthews cannot establish a prima facie case of discrimination. Further, there is no evidence to support her conclusory assertion that defendants' legitimate, non-discriminatory reason for her termination was merely a pretext to discriminate against her because of her race, ethnicity, and/or disability.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment (Dkt. No. 35) is GRANTED; and

2. The complaint is DISMISSED in its entirety with prejudice.

IT IS SO ORDERED.

The Clerk of the Court is directed to enter judgment accordingly and close the case.

Dated: October 29, 2012
      Utica, New York.

United States District Judge